1
2
3
4
5

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

6   Charlotte Cross,

7           Plaintiff,

8   v.

9   Walmart, Inc.,

10          Defendant.

Case No. 2:25-cv-01276-JAD-NJK

**Order**

[Docket No. 17]

11          Pending before the Court is a stipulated protective order, outlining the parties' agreement

12   as to the designation and treatment of information they deem to be confidential.  Docket No. 17.

13   The Court ordered the parties to explain, by October 22, 2025, why judicial approval of their

14   agreement is necessary and warranted.  Docket No. 18.   The parties did not file a response.  For

15   the reasons discussed below, the Court **DENIES** the request for judicial approval of the stipulated

16   protective order.

17   **I.      BACKGROUND**

18          This case arises out of an alleged slip and fall in the produce section of a local Walmart

19   store.  Docket No. 1-1.  Walmart removed the case to federal court on diversity jurisdiction

20   grounds.  Docket No. 1.  On July 30, 2025,  the parties engaged in a Rule 26(f) conference, Docket

21   No. 12 at 1, at which time there was no bar to proceeding with discovery, *see* Fed. R. Civ. P.

22   26(d)(1).  The parties reached an agreement as to the designation and treatment of discovery

23   information they deem to be confidential, and the parties now seek judicial approval of that

24   agreement in the form of a blanket protective order.  Docket No. 17.  The request for a judicially-

25   approved blanket protective order does not provide a factual basis for the Court to determine that

26   any discovery material warrants confidential treatment.  Instead, the stipulation indicates that the

27   parties seek entry of discovery material that "*may* be subject to confidentiality limitations."  *Id.* at

28   1 (emphasis added).  To that end, the stipulation indicates that a party is permitted to designate

1

material if that party "believes in good faith that such information is entitled to confidential treatment." *Id.* at 3. In addition to not substantiating the confidential nature of any particular material that will be exchanged during discovery, the request for a judicially-approved blanket order does not explain why judicial approval is required or how judicial approval impacts in any way the agreement that was already reached between the parties. The Court provided the parties an additional opportunity to explain why judicial approval is necessary, Docket No. 18, but they did not respond to that order.

## II.  STANDARDS

### A.  Protective Orders

"It is well-established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public." *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1103 (9th Cir. 1999). "Rule 26(c) authorizes a district court to override this presumption where 'good cause' is shown." *Id.* More specifically, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). As is clear from the plain text of this rule, "[a] district court must find 'good cause' before issuing a protective order restricting access to discovered information." *Cordero v. Stemilt AG Servs., LLC*, 142 F.4th 1201, 1207 (9th Cir. 2025). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002) (quoting *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992)). Good cause to issue a protective order generally requires a showing as to each document for which protection is sought. *Cordero*, 142 F.4th at 1207 (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003)).

Notwithstanding the above, the Ninth Circuit has also explained that district courts possess discretion to issue blanket protective orders by which parties may designate material as confidential without making a specific showing of good cause. *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011). Judicial approval of a blanket protective order may afford little additional protection, however, providing a false sense of security to

designating parties.  *See, e.g.*, *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1183 (9th Cir. 2006) (in rejecting argument that sealing was warranted by non-parties' reliance on a stipulated protective order, highlighting the "hazard of stipulated protective orders" in that they "often contain provisions that purport to put the entire litigation under lock and key without regard to the actual requirements of Rule 26(c)").  Even after a blanket protective order has issued, the burden of proof remains with the party seeking secrecy.  *Roman Catholic Archbishop*, 661 F.3d at 424.  Mere issuance of a blanket protective order, or designation of material as confidential thereto, does not itself justify confidential treatment of any specific material because no particularized showing of good cause has been made.  *See Beckman Industries*, 966 F.2d at 476 (explaining that a blanket protective order "is by nature overinclusive"); *see also San Jose Mercury News*, 187 F.3d at 1103.  Any dispute arising between the parties (or nonparties) as to whether material designated pursuant to a blanket protective order actually warrants confidential treatment would necessitate a showing of good cause to maintain secrecy.  *See, e.g.*, *Roman Catholic Archbishop*, 661 F.3d at 424.  Any filing with the Court of material designated as confidential pursuant to a blanket protective order would similarly trigger the requirement to make a particularized factual showing to support redaction or sealing.  *See, e.g.*, *Kamakana*, 447 F.3d at 1183 (citing *Foltz*, 331 F.3d at 1133 and *Beckman Industries*, 966 F.2d at 476).  Hence, a party "calling a document confidential does not make it so in the eyes of the court; these consensual protective orders merely delay the inevitable moment when the court will be called upon to determine whether Rule 26(c) protection is deserved."  *Estate of Martin Luther King, Jr., Inc. v. CBS, Inc.*, 184 F. Supp. 2d 1353, 1362 (N.D. Ga. 2002).

District courts "may" issue a protective order.  Fed. R. Civ. P. 26(c)(1).  "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."  *Seattle Times Co. v. Rinehart*, 467 U.S. 20, 36 (1984); *see also, e.g.*, *Phillips*, 307 F.3d at 1211-12.

. . . .

. . . .

. . . .

B.    Discovery Agreements

Discovery is meant to proceed "largely unsupervised by the district court." *Sali v. Corona Reg'l Med. Ctr.*, 884 F.3d 1218, 1219 (9th Cir. 2018); *see also Cardoza v. Bloomin' Brands, Inc.*, 141 F. Supp. 3d 1137, 1145 (D. Nev. 2015) (quoting *F.D.I.C. v. Butcher*, 116 F.R.D. 196, 203 (E.D. Tenn. 1986)).  Unless a discovery-related stipulation interferes with court proceedings or deadlines, parties may agree among themselves to discovery procedures without judicial approval. *See* Fed. R. Civ. P. 29(b); *see also* Local Rule 7-1(b).  Permissible extra-judicial discovery agreements may extend to establishing procedures and protections regarding the exchange of confidential discovery material.  *See Midwest Athletics & Sports All. LLC v. Ricoh USA, Inc.*, 332 F.R.D. 159, 161 (E.D. Penn. 2019) (denying stipulated protective order, while also explaining that, "[n]otwithstanding the absence of judicial *imprimatur*, the parties may agree to maintain confidentiality of discovery materials"); *David J. Frank Landscape Cont'g, Inc. v. La Rosa Landscape*, 199 F.R.D. 314, 315 (E.D. Wis. 2001) (denying stipulated protective order, while also explaining that "[t]he parties are free to enter agreements between themselves regarding how they will disseminate material produced in discovery"); *see also, e.g.*, *Cranmer v. Colo. Cas. Ins. Co.*, Case No. 2:14-cv-00645-MMD-VCF, 2014 WL 6611313, at *3 (D. Nev. Nov. 20, 2014) ("Stipulated confidentiality agreements are private agreements.  If the agreement does not infringe the public's right of access, parties may stipulate to alternative discovery procedures in their discretion").[1]  When parties seek judicial approval of a discovery agreement that does not require judicial approval, courts are well within their discretion to deny such request as unnecessary.  *See, e.g.*, *Comminey v. Sam's W. Inc.*, Case No. 2:19-cv-00508-JAD-NJK, 2020 WL 2764610, at *1 (D. Nev. May 27, 2020) (overruling objection).

---

[1] The fact that the parties agree to secrecy in exchanging discovery does not necessarily mean that such material will be sealed when filed with the Court.  This right to access "belongs to the public," so the parties are themselves "in no position to bargain that right away." *San Jose Mercury News*, 187 F.3d at 1101; *see also, e.g.*, *Allegiant Travel Co. v. Kinzer*, Case No. 2:21-cv-01659-JAD-NJK, 2022 WL 2819734, at *1 n.1 (D. Nev. July 19, 2022) ("Neither an unopposed motion nor a stipulation to seal should be granted as a matter of course . . . because the Court is balancing party interests in confidentiality against the public's interest in transparency" (emphasis in original)).  If discovery material is filed with the Court that was previously designated as confidential pursuant to the parties' agreement, a proper showing must be made at that point to support any request for sealing or redaction.  *See, e.g.*, *Ricoh*, 332 F.R.D. at 161.

### III.    ANALYSIS

A recurring issue in district courts throughout the country has also arisen in this case. Parties in myriad types of matters file dozens of stipulated protective orders each year in cases assigned to the undersigned magistrate judge.  The stipulations generally make no showing of any kind that discovery material warrants confidential treatment.  The stipulations instead provide wide license to the parties to designate discovery material as confidential based on their say so.  The stipulations by their nature embody a private agreement between the parties, but the stipulations provide no explanation as to why judicial approval is necessary or in any way impactful.  Making matters worse, filing these stipulations prompts judicial review that entails a *sua sponte* screening of sometimes lengthy proposed protective orders to ensure the Court is not endorsing positions that are legally erroneous or otherwise problematic.[2]  When the Court has in the past approved stipulated protective orders, it has sought to avoid confusion by issuing an accompanying order explaining that the Court is making no factual findings that confidential treatment is warranted or that discovery materials may be sealed when filed on the docket.  Moving forward, the Court declines to engage in this cumbersome process without a threshold showing that judicial involvement is warranted.

Turning to the stipulated protective order filed in this case, the parties fail to explain the purpose or benefit of judicial approval.  The parties also declined to address this concern when the Court ordered them to do so.  At bottom, the parties have reached an agreement as to designating and limiting disclosure of information they deem to be confidential, the terms of which are binding on the parties without judicial approval.  *See* Fed. R. Civ. P. 29(b).  Moreover, judicial approval of the blanket protective order does not appear to add any heft to that agreement because the Court

---

[2] When parties file stipulations, they are seeking judicial "approval."  The Court does not act as a rubber stamp simply providing its *imprimatur* on that filing without meaningful review, as that would defeat the entire purpose of obtaining judicial approval.  It is entirely common to unearth improper provisions within stipulated protective orders during this review, which prompts the Court to expend its scarce resources to either (1) draft and issue an order sending the stipulated protective order back to the parties, and then to review it again when it is refiled or (2) itself edit the parties' submission to remove or change the problematic provisions.  In these days of crushing caseloads, *see, e.g.*, *Doi v. Halekulani Corp.*, 276 F.3d 1131, 1141 (9th Cir. 2002), federal judges certainly "have better things to do with their time" than essentially taking on the "role of editors" for the parties' papers, *see Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 820 (7th Cir. 2001).

has not been presented with any factual basis to find any particular material actually warrants confidential treatment.  If there is ever a live dispute as to the confidentiality of any specific material, a particularized showing of good cause will be required regardless of judicial approval of the parties' agreed procedures.  Further, if anyone ever files documents containing material designated as confidential such that redaction or sealing is sought, a particularized showing of good cause or compelling reasons will be required regardless of judicial approval of the blanket protective order.[3]  Hence, the Court is unable to discern any point in its involvement with the parties' agreed procedures for confidentiality designations.

IV.    **CONCLUSION**

For the reasons discussed above, the Court **DENIES** the stipulated protective order.

IT IS SO ORDERED.

Dated: October 27, 2025.

_____
Nancy J. Koppe
United States Magistrate Judge

---

[3] The instant stipulation seeks issuance of an order that the parties may file under seal any information they designate as confidential without making any actual showing to justify secrecy. *See* Docket No. 17 at 9-10.  Court endorsement of that proposition would be legal error.  *See, e.g.*, *San Jose Mercury News*, 187 F.3d at 1101.  Hence, the parties' stipulated protective order could not be issued in its current form regardless of the other issues discussed herein.